Clayeo C. Arnold, California SBN 65070
carnold@justice4you.com
Joshua H. Watson, California SBN 238058
jwatson@justice4you.com
**CLAYEO C. ARNOLD, A**
**PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, California 95825
T: 916-777-7777
F: 916-924-1829

John A. Yanchunis (*Pro Hac Vice* to be filed)
jyanchunis@ForThePeople.com
Ryan J. McGee (*Pro Hac Vice* to be filed)
rmcgee@ForThePeople.com
Marisa Glassman (*Pro Hac Vice* to be filed)
mglassman@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: 813-223-5505
F: 813-223-5402 (fax)

Kevin S. Hannon (*Pro Hac Vice* to be filed)
khannon@hannonlaw.com
**THE HANNON LAW FIRM, LLC**
1614 N. Downing Street
Denver, CO 80218
T: 303.861.8800
F: 303.861.8855

Steven Teppler (*Pro Hac Vice* to be filed)
steppler@abbottlawpa.com
**ABBOTT LAW GROUP P.A.**
2929 Plummer Cove Road
Jacksonville, FL 32223
T: 904.292.1111
F: 904.292.1220

Briana Kim (SBN 255966)
Briana@BrianaKim.com
249 East Ocean Blvd., Suite 814
Long Beach, CA 90802
T: 714-482-6301
F: 714-482-6302

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Susan Hwang, individually, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>      v.<br><br>Facebook, Inc., a Delaware corporation,<br><br>                Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

INTRODUCTION ..................................................................................................1

SUMMARY OF THE CASE ...................................................................................1

JURISDICTION AND VENUE ..............................................................................2

PARTIES ................................................................................................................2

FACTUAL BACKGROUND ..................................................................................3

CLASS ACTION ALLEGATIONS .......................................................................11

CLAIMS ALLEGED ON BEHALF OF ALL CLASS MEMBERS .......................16

    First Claim for Relief – Violation of California's Unfair Competition Law (Cal.
    Bus. & Prof. Code §§ 17200, *et. seq.*) ...........................................................16

    Second Claim for Relief – Violation of California's Unfair Competition Law (Cal.
    Bus. & Prof. Code §§ 17200, *et. seq.*) ...........................................................17

    Third Claim for Relief – Violation of the Stored Communications Act (18 U.S.C.
    §§ 2701, *et. seq.*) ...........................................................................................18

    Fourth Claim for Relief – Negligence ...............................................................19

    Fifth Claim for Relief – Invasion of Privacy .....................................................20

    Sixth Claim for Relief – Intentional Misrepresentation......................................22

    Seventh Claim for Relief – Unjust Enrichment ..................................................23

    Eighth Claim for Relief – Conversion ...............................................................24

    Ninth Claim for Relief – Trespass to Personal Property......................................25

PRAYER FOR RELIEF ..........................................................................................26

JURY TRIAL DEMAND .........................................................................................27

## INTRODUCTION

Plaintiff Susan Hwang, individually and on behalf of herself and all others similarly situated, alleges the following against Defendant Facebook, Inc. ("Facebook"), based on personal knowledge as to Plaintiff and Plaintiff's own acts and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiff's undersigned counsel:

## SUMMARY OF THE CASE

1.     Facebook operates a social networking website that allows people to communicate with their family, friends, and coworkers. Facebook develops technologies that facilitate the sharing of information, photographs, website links, and videos.  Facebook purports to allow its users the ability to share and restrict information based on their own specific criteria.  By the end of 2017, Facebook had more than 2.2 billion active users.

2.     As part of the sign up process and as a consequence of interacting with the network, Facebook's users create, maintain, and update profiles containing significant amounts of personal information, including their names, birthdates, hometowns, addresses, locations, interests, relationships, email addresses, photos, and videos, amongst others, referred to herein as "Personal Information."

3.     This case involves the absolute and intentional disregard with which Facebook chose to treat Plaintiff's and the Class members' Personal Information.  While this information was supposed to be protected, and used only for expressly disclosed and limited purposes, Facebook permitted third-party device manufacturers to collect the Personal Information of virtually every Facebook user located in the United States who accessed the Facebook platform via a mobile device. Facebook entered into a consent decree with Federal Trade Commission in 2011, the consequence of which the company was to have halted the

Class Action Complaint

practices admitted to have taken place and as alleged more fully herein. Plaintiff brings this suit to protect her privacy interests and those of the class.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendant and is a citizen of a foreign state.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper under 28 U.S.C. § 1391(c) because Defendant is a corporation that does business in and is subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, including the decisions made by Facebook to permit the information aggregation and collection of the information.

## PARTIES

**A.     Class Representatives**

6.      Plaintiff Susan Hwang is a citizen and resident of the State of California. Plaintiff Susan Hwang has owned and used a Facebook account on her mobile device for over five years.

**B.     Defendant**

7.     Defendant Facebook, Inc., is a Delaware corporation with its principal executive offices located at 1601 Willow Road, Menlo Park, California 94025. Facebook's securities trade on the NASDAQ under the ticker symbol "FB."

# FACTUAL BACKGROUND

8.      This case involves the continuing and absolute disregard with which Defendant Facebook, has chosen to treat the Personal Information of smartphone, tablet, and other electronic devices users utilize to access Facebook's social media platform.  While this information was supposed to be protected, Facebook, without authorization, or by exceeding whatever limited authorization it, or its agents, had, permitted device manufacturers, including Apple, Amazon, Blackberry, Microsoft, Samsung, and other smartphone, mobile, and other device manufacturers, to improperly collect and use the Personal Information of users—numbering in the millions—of Facebook's applications.

9.      Facebook's Terms of Service state  that the Facebook user is the owner of all of their data. Facebook's representation to Plaintiff and Class Members that "Protecting people's information is at the heart of everything we do"[1] was in fact a misrepresentation, and one which Plaintiff and Class Members relied upon.  In fact, Facebook had known about this security breach for two years, but did little or nothing to protect its users.[2]

10.      Facebook represents to its users that: "you have control over who sees what you share on Facebook."[3]  Facebook represents to its users that: "We have top-rate security measures in place to help protect you and your data when you use Facebook."[4]  Facebook represents to its users that: "Your activity (ex: posting a status or sending a message) is encrypted, which means it's turned into code so people can't access it without your

[1]    Matthew Rosenberg, Nicholas Confessore, and Carole Cadwalladr, *How Trump Consultants Exploited the Facebook Data of Millions*, THE NEW YORK TIMES (March 17, 2018) https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html (last visited August 30, 2018).

[2]    *Id.*; *Utterly horrifying: ex-Facebook insider says covert data harvesting was routine*, THE GUARDIAN (March 20, 2018) https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas (last visited August 30, 2018).

[3]    Facebook, *Privacy Basics*, https://www.facebook.com/about/basics (last visited August 30, 2018).

[4]    Facebook, *How You're Protected*, https://www.facebook.com/about/basics/stay-safe-and-secure/how-youre-protected (last visited August 30, 2018).

Class Action Complaint

permission."[5]  Facebook represents to its users that: "When it comes to your personal information, we don't share it without your permission (unless required by law)."[6] Facebook represents to its users that: "Facebook gives people control over what they share, who they share it with, the content they see and experience, and who can contact them."[7]

11.    At all relevant times, Facebook has maintained a Data Use Policy on its website. That Data Use Policy advised Facebook users, in part:

> Granting us permission to use your information not only allows us to provide Facebook as it exists today, but it also allows us to provide you with innovative features and services we develop in the future that use the information we receive about you in new ways. While you are allowing us to use the information we receive about you, you always own all of your information. ***Your trust is important to us, which is why we don't share information we receive about you with others unless we have:***
>
> - ***received your permission***
> - ***given you notice***, such as by telling you about it in this policy; or
> - removed your name and any other personally identifying information from it.

(Emphases added).[8]

12.    Even before his statements (and Facebook's series of written responses) made to Congress, Facebook's Chief Executive Mark Zuckerberg, stated "Every piece of content that you share on Facebook you own. … You have complete control over who sees it and how your share it.[9] Facebook users, including Plaintiff and the Class Members, reasonably relied on Facebook's representations for the security of their Personal Information in using Facebook and posting Personal Information on Facebook.

---

[5]  *Id.*
[6]  *Id.*
[7]  Facebook, *Safety*, https://www.facebook.com/safety (last visited August 30, 2018).
[8]  Facebook, *Data Use Policy*, https://www.facebook.com/full_data_use_policy (last visited August 30, 2018)
[9]  Gabriel Dance, Nicholas Confessore, and Michael LaForgia, *Facebook Gave Device Makers Deep Access to Data on Users and Friends*, THE NEW YORK TIMES (June 3, 2018) https://www.nytimes.com/interactive/2018/06/03/technology/facebook-device-partners-users-friends-data.html (last visited August 30, 2018).

13.     Unquestionably, Facebook's focus is, and has been on mobile devices. As early as 2013, Mashable reports that:

> Mobile has become the company's most important focus, the platform that it will use to sign up the site's next billion users (and probably the billion after that, too). Since launching native iOS and Android apps last fall, Facebook has taken a mobile first approach both publicly and internally.[10]

14.     Smartphone companies shipped a total of 1.46 billion devices in 2017, and have shipped billions of devices in previous years from which Facebook allowed to collect its users personal data.

15.     Device manufacturers such as Apple, Amazon, Blackberry, Microsoft and Samsung and others are or have been Facebook "integration partners."  Facebook has allowed these "partners" to collect and use Facebook users' Personal Information from Facebook in excess of permissions given by its users.

16.     The facts underlying the instant action came to light as a result of reporting by both the *New York Times* and *The Guardian* in March of 2018, a series of hearings and inquiries conducted by both houses of Congress, and including testimony before Parliament in the United Kingdom in connection with social media titan Facebook.

17.     On June 3, 2018, the *New York Times* reported that Facebook provided "at least 60 device makers" including Apple, Amazon, Blackberry, Microsoft, Samsung, and mobile and other device manufacturers ("Device Manufacturers") with "vast amounts" of Facebook's user's Personal Information.[11]  Not only were Device Manufacturers provided access to Facebook users' Personal Information, but Facebook allowed Device Manufacturers to retrieve Personal Information from Facebook users' friends.[12]  Some

---

[10]   Kurt Wagner, *Inside Facebook's Mobile Strategy*, Mashable, https://mashable.com/2013/09/20/facebook-mobile-strategy/#4rTNKXOKigqy (last visited August 22, 2018)
[11]   Dance, Confessore, and Laforgia, *supra* n.9.
[12]   Dance, Confessore, and Laforgia, *supra* n.9.

Device Manufacturers could even retrieve Personal Information from users' friends who believed they had explicitly barred sharing of any Personal Information.[13]

18.     The *New York Times* also reported that most of Facebook's partnerships remain in effect[14] and, upon information and belief, have not been terminated as of the filing of this class action complaint.

19.     In order to conceal the extent of its data-sharing activities with Device Manufacturers, Facebook conveniently and misleadingly characterizes Device Manufacturers not as outsiders, but as "extensions of Facebook serving its more than two billion users."[15]

20.     The *New York Times* also reported that "Facebook's view that the [Device Manufacturers] are not outsiders lets the partners go even further. The Times found: [The Device Manufacturers] can obtain data about a user's Facebook friends, even those who have denied Facebook permission to share information with any third parties."[16] Further Device Manufacturers can retrieve Facebook users' relationship status, religion, political leaning and upcoming events, among other data.[17]

21.     In connection with the publication of that article, a *New York Times* reporter connected his Blackberry device (one of Facebook's "*integration partners*") to his Facebook account.  The device requested some of his profile data, including user ID, name, picture, "about" information, location, email, and cell phone number. The device then retrieved the reporter's private messages and the responses thereto, along with the name and user ID of each person with whom the reporter was communicating.[18]

---

[13]  Dance, Confessore, and Laforgia, *supra* n.9.
[14]  Dance, Confessore, and Laforgia, *supra* n.9.
[15]  Dance, Confessore, and Laforgia, *supra* n.9.
[16]  Dance, Confessore, and Laforgia, *supra* n.9.
[17]  Dance, Confessore, and Laforgia, *supra* n.9.
[18]  Dance, Confessore, and Laforgia, *supra* n.9.

22.     The Hub also requested—and received—data that Facebook's policies prohibit, and upon information and belief, without the user consent. Since 2015, Facebook has represented that apps can request only the names of friends using the same app; however, the BlackBerry app had access to all of the reporter's Facebook friends and, for most of them, returned information such as user ID, birthday, work, education history and whether they were currently online using the Facebook application.  The BlackBerry device was also able to retrieve identifying information for nearly 295,000 Facebook users. Most of them were second-degree Facebook friends of the reporter—that is, friends of the reporter's friends. In all, Facebook empowers BlackBerry devices to access more than 50 types of information about users and their friends, *The Times* found.[19]

23.     Ime Archibong, Facebook's vice president of product partnerships, said in blog post that Facebook has maintained tight control over the technology, known as application programming interfaces, or APIs, and that Facebook is not aware of any abuse by the companies that it teamed with.[20]  The APIs now in question, according to Archibong, are very different from those used by Cambridge Analytica.[21]

24.     Much, if not all, of the *New York Times* reporting on the issue is confirmed by Facebook's June 29, 2018, written responses to the seven hundred questions the United States House of Representatives Commerce and Energy Committee submitted to Facebook in April 2018. ("June 2018 Responses").[22]

---

[19]   Dance, Confessore, and Laforgia, *supra* n.9.
[20]   AP, *Facebook Shared    User Data with at least 60 Device Makers, Including Apple* https://www.inc.com/associated-press/facebook-data-sharing-practices-partnership-apple-amazon-samsung-privacy-concerns.html (last visited August 30, 2018).
[21]   *Id.*
[22]   Facebook, *Letter to House Commerce and Energy Committee*, June 29, 2018, available at https://docs.house.gov/meetings/IF/IF00/20180411/108090/HHRG-115-IF00-Wstate-ZuckerbergM-20180411-SD003.pdf (hereinafter, "*Letter to House*")

Class Action Complaint

25.     In the June 2018 Responses, Facebook identifies the types of data its collects from users:

- Device attributes: information such as the operating system, hardware and software versions, battery level, signal strength, available storage space, browser type, app and file names and types, and plugins.
- Device operations: information about operations and behaviors performed on the device, such as whether a window is foregrounded or backgrounded, or mouse movements (which can help distinguish humans from bots).
- Identifiers: unique identifiers, device IDs, and other identifiers, such as from games, apps or accounts people use, and Family Device IDs (or other identifiers unique to Facebook Company Products associated with the same device or account).
- Device signals: Bluetooth signals, and information about nearby Wi-Fi access points, beacons, and cell towers.
- Data from device settings: information users allow us to receive through device settings people turn on, such as access to their GPS location, camera, or photos.
- Network and connections: information such as the name of users' mobile operator or ISP, language, time zone, mobile phone number, IP address, connection speed and, in some cases, information about other devices that are nearby or on users' network, so we can do things like help people stream a video.
- Cookie data: data from cookies stored on a user's device, including cookie IDs and settings.[23]

26.     Facebook also disclosed in its June 2018 Responses the extent to which vast amounts of user data can be shared between it and the company's "integration partners":

> Advertisers, app developers, and publishers can send us information through Facebook Business Tools they use, including our social plug-ins (such as the Like button), Facebook Login, our APIs and SDKs, or the Facebook pixel. These partners provide information about users' activities off Facebook—including information about a user's device, websites users visit, purchases users make, the ads they see, and how they use their services—whether or not they have a Facebook account or are logged into Facebook.[24]

27.     The *New York Times* reported that Sandy Parakilas, former lead for Facebook's third-party advertising and privacy compliance platform, noted that the device partnerships raised privacy concerns as early as 2012, stating that "[Facebook's Device Manufacturer Partnership] was flagged internally as a privacy issue."[25]

---

[23] *Letter to House*, at p. 112.
[24] *Letter to House*, at p. 112.
[25] Dance, Confessore, and Laforgia, *supra* n.9.

28.     The *New York Times* uncovered the existence of Facebook's device manufacturer partnerships in its June 3, 2018, bombshell report.  Facebook ultimately disclosed some detail as well as the identities of those Device Manufacturers in its June 2018 Responses—apparently only as a consequence of the *New York Times* June 3, 2018 report.[26]

29.     In its June 2018 Responses, Facebook confirmed that it "… has separately entered into partnerships with businesses, primarily devices and operating systems, to integrate Facebook and Facebook features on to those companies' devices and other products."[27]  Upon information and belief, these arrangements, characterized by Facebook as "integration partnerships" are still in effect.[28] Facebook explains its open-access to integration partners in its June 2018 Responses:

> Separately, Facebook entered into partnerships with businesses, primarily devices and operating systems, to integrate Facebook and Facebook features on to those companies' devices and other products …The partnerships— which we call "integration partnerships"—began before iOS and Android had become the predominant ways people around the world accessed the internet on their mobile phones …To provide these experiences, we permitted partners to use certain Facebook application programming interfaces (or "APIs"), which are basic technologies that enable two computing systems to "talk" to one another…[29]

30.     By engaging in the data-sharing activities with Device Manufacturers, Facebook failed to comply with its: 1) own Data Use policy; 2) obligations pursuant to its 2011 Consent Decree with the Federal Trade Commission ("FTC"); and 3) obligations generally to protect user information.

31.     Facebook's activities as alleged herein have violated *and eroded* the privacy of millions of people in every state.  The privacy, as well as sensitive Personal Information of millions of people is now at high risk for identity theft and compromise, and will continue to

---

[26]  *Letter to House*, at 20
[27]  *Letter to House*, at 20.
[28]  *Letter to House*, at 20.
[29]  *Letter to House*, at 20.

Class Action Complaint

be at risk as a direct result of the acts of Defendant. Indeed, that the sensitive Personal Information of these millions of people remain at substantially higher risk of continuing and repeated future injury.

32.    Upon information and belief, the Personal Information shared by Facebook with the Device Manufacturers includes the Personal Information of minor children as well as adults, including Plaintiff.

33.    On March 19, 2018, *Bloomberg* published an article entitled "FTC Probing Facebook For Use of Personal Data, Source Says," disclosing that the U.S. Federal Trade Commission ("FTC") was investigating whether Facebook violated the terms of a 2011 FTC consent decree regarding its handling of user data.[30]

34.    Under the 2011 settlement with the FTC, Facebook "agreed to get user consent for certain changes to privacy settings as part of a settlement of federal charges that it deceived consumers and forced them to share more Personal Information than they intended."[31]

35.    Plaintiff Susan Hwang enabled the Facebook application on her mobile device, an iPhone, and uses her Facebook account that she owns through the Facebook application on her mobile phone.  Plaintiff Hwang did not give consent to Defendant Facebook to provide her Personal Information to Device Manufacturers, and did not consent to Defendant Facebook to allow Device Manufacturers such access.  Plaintiff  Hwang suffered annoyance and interference by the release of her Facebook data by Defendant, is concerned about the privacy of her Facebook data, of which she is the owner, and has suffered injuries, damages, and losses by the loss of her private data.

---

[30]    Bloomberg Markets, *FTC Said to Probe Facebook on Personal Data Use*, Bloomberg (March 19, 2018) https://www.bloomberg.com/news/videos/2018-03-20/facebook-said-to-face-ftc-probe-on-use-of-personal-data-video (last visited August 30, 2018)
[31]    *Id.*

**CLASS ACTION ALLEGATIONS**

36.     Pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of herself and as a class action on behalf of the following class:

> All natural persons residing in the United States who registered for Facebook accounts in the United States and whose Personal Information was either sent by Facebook to, or shared by Facebook with Device Manufacturers.

37.     Excluded from the Class is Defendant and any entities in which any Defendant or its subsidiaries or affiliates have a controlling interest, and Defendant's officers, agents, and employees.  Also excluded from the Class are the judge assigned to this action, their respective staffs, and any member of the judge's immediate family.

38.     **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class would be impracticable.  Plaintiff reasonably believes that the Class members number in the millions or more in the aggregate. The names and contact information of the Class members are identifiable through documents maintained by Defendant.

39.     **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual the Class members, including:

i.      Whether Facebook represented that it would safeguard Plaintiff's and the Class members' Personal Information and not disclose it without consent;

ii.     Whether Facebook improperly provided Plaintiff's and the Class members' Personal Information to Device Manufacturers without authorization or in excess of any authorization;

iii.  Whether third parties improperly obtained Plaintiff's and the Class members' Personal Information without authorization or in excess of any authorization;

iv.  Whether Facebook owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

v.  Whether Facebook breached a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

vi.  Whether Facebook was required to notify Plaintiff and the Class members of the unauthorized dissemination of the Personal Information;

vii.  Whether Facebook's conduct violated Cal. Civ. Code § 1750, *et seq.*;

viii.  Whether Facebook's conduct violated 18 U.S.C. § 2701, *et. seq.*;

ix.  Whether Facebook's conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

x.  Whether Facebook's conduct violated Article I, Section 1, of the California Constitution;

xi.  Whether Facebook's conduct violated Plaintiff's and the Class members' common law right to privacy;

xii.  Whether Facebook's conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*,

xiii.  Whether Plaintiff and the Class members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution;

Class Action Complaint

xiv.    Whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

xv.    Whether Plaintiff and the Class members are entitled to punitive damages.

40.    Facebook engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the members of the class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

41.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the class because, among other things, Plaintiff and the Class members were injured through the substantially uniform misconduct by Facebook. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of the Class members arise from the same operative facts and are based on the same legal theories.

42.    **Adequacy of Representation:** Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

43.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other members of the class are

relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Facebook, making it impracticable for the Class members to individually seek redress for Facebook's wrongful conduct. Even if the Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

44.     Further, Facebook has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

45.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.     Whether Facebook improperly provided the Class members' Personal Information to Device Manufacturers;

b.     Whether the Class members' Personal Information was improperly obtained by third parties;

c.     Whether (and when) Facebook knew about the improper collection of Personal Information;

d.     Whether Facebook's conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

e.    Whether Facebook's representations that it would secure and not disclose without consent the Personal Information of Plaintiff and Class members were facts that reasonable persons could be expected to rely upon when deciding whether to use Facebook's services and provide Facebook with Personal Information;

f.    Whether Facebook misrepresented the safety of its many systems and services, specifically the security thereof, and their ability to safely store Plaintiff's and the Class members' Personal Information;

g.    Whether Facebook failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

h.    Whether Facebook's acts, omissions, misrepresentations, and practices were and are likely to deceive consumers;

i.    Whether Facebook's conduct violated Cal. Bus. & Prof. Code § 22575, *et seq.*;

j.    Whether Facebook failed to adhere to its posted privacy policy concerning the care it would take to safeguard Plaintiff's and the Class members' Personal Information in violation of California Business and Professions Code § 22576; and

k.    Whether Facebook negligently and materially failed to adhere to its posted privacy policy with respect to the extent of their disclosure of users' data, in violation of California Business and Professions Code § 22576.

## CLAIMS ALLEGED ON BEHALF OF ALL CLASS MEMBERS

### First Claim for Relief
#### Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice
#### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

46.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 35 as though fully stated herein.

47.     By reason of the conduct alleged herein, Facebook engaged in unfair, unlawful, or fraudulent business acts or practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

48.     Facebook represented that it would not disclosure users' Personal Information without consent and/or notice.

49.     Facebook failed to abide by these representations. Facebook did not prevent improper disclosure of Plaintiff's and the Class members' Personal Information.

50.     Device Manufacturers, or what Facebook deems "integration partners," obtained Plaintiff's and the Class members' Personal Information either wholly without authorization or in excess of any authorization it—or its agents—may have obtained.

51.     Facebook's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Cal. Civ. Code § 1798.81.5(b), Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and Cal. Bus. & Prof. Code § 22576 (as a result of Facebook failing to comply with its own posted policies).

52.     Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Facebook's unlawful business practices. In particular, Plaintiff's and the Class members' Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the information is of tangible value.

53.     As a result of Facebook's unlawful business practices, Plaintiff and the Class members are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

**<u>Second Claim for Relief</u>**
**Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice**
**(Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**

54.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 35 as though fully stated herein.

55.     By reason of the conduct alleged herein, Facebook engaged in unfair, unlawful, or fraudulent business acts or practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

56.     Facebook stored the Personal Information of Plaintiff and Class members in its electronic and consumer information databases, and represented to Plaintiff and the Class members that their Personal Information would remain private.

57.     Facebook engaged in unfair acts and business practices by representing that it would not disclose this Personal Information without authorization.

58.     Facebook further engaged in unfair acts and business practices by disseminating Plaintiff's and the Class members' Personal Information without authorization or in excess of the authorization provided.

59.     Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Facebook's unfair business practices. In particular, Plaintiff's and the Class members' Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the information is of tangible value.

60.     As a result of Facebook's unfair business practices via the violations of the UCL, Plaintiff and the Class members are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

**Third Claim for Relief**
**Violation of the Stored Communications Act**
**(18 U.S.C. §§ 2701,** *et seq.***)**

61.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 35 as though fully stated herein.

62.     The Stored Communications Act ("SCA") protects people from a person who "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a).

63.     Electronic storage is "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17).

64.     An electronic communication service is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

65.     A person includes "any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

66.     Facebook is an electronic communications service provider.

67.     Facebook is a person within the meaning of the SCA.

68.     Facebook knowingly divulged to Device Manufacturers the contents of Plaintiff's and the Class members' communications while in electronic storage by Facebook.

69.    Facebook intentionally accessed without authorization or, alternatively, intentionally exceeded authorization to access, Plaintiff's and the Class members' electronic communications, which contained Personal Information.

70.    Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Facebook's unfair business practices.  In particular, Plaintiff's and the Class members' Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the information is of tangible value.

71.    As a result of Facebook's violations of the SCA, Plaintiff and the Class members are entitled to preliminary and other equitable or declaratory relief as may be appropriate.

72.    As a result of Facebook's violations of the SCA, Plaintiff and the Class members are also entitled the greatest amount of: (a) actual damages; (b) disgorgement of any profits Facebook made as a result of the violations; or (c) $1,000.

73.    As a result of Facebook's willful or intentional violations of the SCA, Plaintiff and the Class members are entitled to punitive damages.

**<u>Fourth Claim for Relief</u>**
**Negligence**

74.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 35 as though fully stated herein.

75.    Facebook owed a duty to Plaintiff and the Class members to exercise reasonable care in obtaining and protecting their Personal Information, and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties.

76.    Facebook knew that Plaintiff's and the Class members' Personal Information was personal and sensitive information that is valuable.

77.     Facebook had a special relationship with Plaintiff and the Class members by virtue of their entrusting Facebook to safeguard their Personal Information. Plaintiff and the Class members signed up for Facebook's services and agreed to provide their Personal Information with the understanding that Facebook would take appropriate measures to protect the Personal Information, and would inform Plaintiff and the Class members of any breaches or other security concerns that might call for action by Plaintiff and the Class members. Facebook, however, failed to prevent Device Manufacturers from improperly obtaining Plaintiff's and the Class members' Personal Information.

78.     Facebook breached its duties by failing to adopt, implement, and maintain adequate security measures to safeguard the Personal Information, or by obtaining and sharing that Personal Information without authorization or in excess of any authorization.

79.     Facebook also breached its duty to timely disclose that Plaintiff's and the other Class members' Personal Information had been, or was reasonably believed to have been, improperly disseminated.

80.     But for Facebook's wrongful and negligent breach of their duties owed to Plaintiff and the Class members, their Personal Information would not have been improperly obtained. Facebook's negligence was a direct and legal cause of the dissemination of the Personal Information of Plaintiff and the Class members, as well as all resulting damages.

81.     The injury and harm Plaintiff and the Class members suffered was the reasonably foreseeable result of Facebook's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' Personal Information.

### Fifth Claim for Relief
### Invasion of Privacy

82.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 35 as through fully stated herein.

83.    Facebook's terms and conditions designate California law as the sole applicable law governing the relationship between Facebook and its users.

84.    The California Constitution expressly provides for a right to privacy. Cal. Const. Art. I, Sec. 1.

85.    Facebook's terms of use for all times relevant to this matter provided that users' Personal Information would not be released to third parties without express consent.

86.    Absent their express consent, Plaintiff and the Class members used Facebook's platform with the reasonable expectation that their Personal Information was safeguarded, would not be disclosed to or stolen by any unauthorized parties, and would not be disclosed or otherwise provided to any unauthorized parties for any improper purpose.

87.    Plaintiff and the Class members had an interest in the protection and non-dissemination of the Personal Information that Facebook electronically stored.

88.    Absent Plaintiff's and the Class members' express consent, Facebook unlawfully invaded the privacy rights of Plaintiff and the Class members by: (a) failing to adequately secure their Personal Information from disclosure to unauthorized parties for improper purposes; (b) disclosing their Personal Information to unauthorized parties in a manner that is highly objectionable to a reasonable person; and (c) disclosing their Personal Information to unauthorized parties without the informed and clear consent of Plaintiff and the Class members, or in excess of any previously provided consent of Plaintiff and the Class members.

89.    Facebook knew or should have known that its violations of Plaintiff's and the Class members' privacy rights would be highly offensive to a reasonable person in the same position as Plaintiff and the Class members.

90.    Through the conduct described above, Facebook intentionally, maliciously, oppressively, and willfully intruded upon and frustrated Plaintiff's and the Class members' private life, seclusion, and solitude, protected under the California constitution as well as common law.

91.    Through the conduct described above, Facebook's intentional intrusion was calculated to injure Plaintiff and the Class members with conscious disregard for their privacy rights.

92.    Facebook's wrongful conduct harmed Plaintiff and the Class members due to the exposure of their Personal Information to unauthorized third parties.

93.    As a direct and proximate result of Facebook's wrongful conduct, Plaintiff and the Class members have suffered injury and are entitled to appropriate relief, including injunctive relief and damages.

### Sixth Claim for Relief
### Intentional Misrepresentation

94.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 35 as through fully stated herein.

95.    Facebook intentionally misrepresented the use and access to the data that Plaintiff and Class Members owned on their Facebook sites.  Defendant Facebook intentionally misrepresented that it would not disclose Plaintiff's and the Class Members' Personal Information without authorization.

96.    Facebook intentionally misrepresented to the Plaintiff and the Class the protection and privacy of their Facebook data as described above, and in other means.  In addition,  Facebook intentionally failed to disclose that information was available to Device Manufacturers.

97.    Defendant's representations were false because Facebook knowingly and intentionally provided the Personal Information of Plaintiff and Class Members to Device

Manufacturers, and did so for Facebook's financial and commercial advantage without either permission or sufficient consent from Plaintiff and Class Members.

98.    Facebook's representations were material to Plaintiff's and Class Members' decision to post and provide Personal Information on Facebook.

99.    Plaintiff and the Class Members justifiably relied on the representations Facebook made in its Privacy Policy and elsewhere on their website and acted in reliance on those representations by placing Personal Information on Facebook.

100.    Facebook knew of the falsity of its representations, and its representations were made to deceive Plaintiff and Class Members into providing Personal Information that could be used for Facebook's financial and marketing advantage.

101.    Facebook knew it did not have permission to allow Device Manufacturers to collect and/or access Personal Information because it did not attempt to obtain permission from Plaintiff and the Class Members.

102.    Plaintiff and the Class Members suffered injury-in-fact and lost property as a proximate result of Facebook's intentional misrepresentation.

103.    As a direct and proximate result of Facebook's intentional misrepresentation, Plaintiff and Class Members suffered injuries, damages, losses or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

## Seventh Claim for Relief
### Unjust Enrichment

104.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 35 as through fully stated herein.

105.    Defendant has received and retained moneys by using and marketing Personal Information owned by Plaintiff and Class Members without their consent.  Defendant thus

profited by the taking of the property of Plaintiff and Class Members without compensating Plaintiff and Class Members.

106.    Defendant has thus received a benefit at the expense of Plaintiff and Class Members, and not by mistake but by intentional conduct.  It would be unconscionable and contrary to equity for Defendant to retain that benefit.

107.    The Court should award as a remedy the monies obtained by Defendant as a result of the use of Plaintiff's and Class Members' property (their Personal Information), and the reasonable value of that property.

### Eighth Claim for Relief
**Conversion**

108.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 35 as through fully stated herein.

109.    As Facebook's terms of service admit, Plaintiff and Class Members were the owners and possessors of private data in the form of their Personal Information.  As a result of their wrongful conduct, Defendant  has interfered with the Plaintiff's and Class Members' right of possession and control of such property and taken that property for their own use, property to which Plaintiff and Class Members had a superior right of possession and control at the time of conversion.

110.    In converting Plaintiff's and Class Members' Private Information Defendant acted with malice, oppression, and in conscious disregard of the rights of Plaintiff and Class Members.

111.    As a direct and proximate result of Defendant's conversion of Plaintiff's and Class Members' property, Plaintiff and Class Members suffered injuries, damages, losses, or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

### Ninth Claim for Relief
### Trespass to Personal Property

112.     Plaintiff repeats, reallges, and incorporates by reference the allegations contained in paragraphs 1 through 35 as though fully stated herein.

113.     Facebook has repeatedly represented to Plaintiff, as well as Class members, Congress, and other governmental bodies of the world, that users (including Plaintiff and the Class members) "own all of the content and information [they] post on Facebook."

114.     Facebook, intentionally and without consent, or exceeding any consent previously obtained from users, shared Plaintiff's and Class members' property, including their user data and Personal Information, with Device Manufacturers.

115.     Facebook's intentional and unauthorized, or exceeding any authorization previously obtained, sharing of Plaintiff's and Class members' property, including their user data and Personal Information, interfered with Plaintiff's and Class member's possessory interests in that property.

116.     Facebook's conduct caused Plaintiff and Class members damage when the property, including user data and including Personal Information, was shared with the Device Manufacturers, as well as when Facebook unjustly profited from the sharing of Plaintiff's and Class members' property, including user data and Personal Information, which deprived Plaintiff and Class members of any income or other form of compensation Facebook generated through its unauthorized (or exceeding any authorization previously obtained) data-sharing partnerships.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter an Order:

(a)    Certifying the United States Class and appointing Plaintiff as Class Representative;

(b)    Finding that Facebook's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

(c)    Enjoining Facebook from engaging in further negligent, deceptive, unfair, and unlawful business and practices alleged herein;

(d)    Ordering an accounting by Facebook of any and all profits derived by it from its alleged unlawful, unfair and/or fraudulent conduct and business and business practices;

(e)    Awarding Plaintiff and the Class members nominal, actual, compensatory, special, and consequential damages;

(f)    Awarding Plaintiff and the Class members statutory damages and penalties, as allowed by law;

(g)    Awarding Plaintiff and the Class members restitution and disgorgement of all money or property wrongfully obtained by Facebook by means of its unlawful, unfair, and fraudulent business practices;

(h)    Awarding Plaintiff and the Class members punitive damages;

(i)    Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

(j)    Awarding Plaintiff and the Class members reasonable attorneys' fees costs and expenses, and;

(k)    Granting such other relief as the Court deems just and proper.

Class Action Complaint

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: August 30, 2018
                                                   <u>/s/ *Joshua H. Watson*</u>
                                                   Joshua H. Watson

                                                   *Attorneys for Plaintiff*